**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
LESLIE EPSTEIN,

                     Plaintiff,               **MEMORANDUM OF**
                                            **DECISION & ORDER**

          -against-                  18-cv-4751 (GRB)(AYS)

EVERGREEN COMPUTER SOLUTIONS,
INC. and PRECISION CARE SOFTWARE,
INC.,

                     Defendants.
-------------------------------------------------------------X
**GARY R. BROWN, United States District Judge**:

       In this action, plaintiff Leslie Epstein ("plaintiff") seeks recovery under the Fair Labor

Standards Act, as amended, 29 U.S.C. §§ 201, et seq. ("FLSA"), *inter alia*, based on a purported

failure to appropriately pay overtime wages.  Before the Court is a motion for summary judgment

by defendants Evergreen Computer Solutions, Inc. and Precision Care Software, Inc. (collectively

"defendants"), seeking summary judgment on plaintiff's FLSA cause of action.  Arguments made

at a pre-motion conference and in the parties' filings have teased out the primary issue for

resolution: whether the plaintiff was exempted from overtime pay based on the administrative

exemption.  Because the undisputed facts unequivocally demonstrate that the exemption applies,

the Court grants the motion as to plaintiff's overtime claims and exercises its discretion to decline

to exercise supplemental jurisdiction over the remaining state law claims.

### PROCEDURAL HISTORY AND UNDISPUTED FACTS

       The relevant, material undisputed (or ineffectually disputed) facts include the

following:  Defendants, entities that provide electronic health records and related software

and services to entities that provide support for disabled individuals, employed plaintiff as

an account manager from January 4, 2010 to June 15, 2018.  DE 55-1 at ¶¶ 1-3.  One such

product provided by defendants, according to plaintiff, is PrecisionCare software, used by organizations that provide services to individuals with mental or developmental disabilities. *Id.* at ¶ 4. Working as an account manager includes deployment of specialized knowledge of Human Resources and regulatory requirements related to social work. *Id.* at ¶¶ 5-8, 25.[1] Plaintiff was paid on a salaried basis, earned $78,000 annually (more than $455 per week) and understood that overtime work would not result in additional payments. *Id.* at ¶¶ 15-16. Defendants classified the position as exempt under the FLSA and New York Labor Law ("NYLL"). *Id.* at ¶ 18.

As an account manager, plaintiff maintained customer accounts, made on-site visits, learned software and trained customers to use the defendants' products. *Id.* at ¶ 19. In that capacity, she would gather information about customers and helped build customer relationships. *Id.* at ¶ 21. She worked collaboratively with customers to help customize and, in some cases, initiate changes to the software to meet customer needs. *Id.* at ¶¶ 22-23. Plaintiff worked from home, to some extent set her own hours, and could take sick leave without permission. *Id.* at ¶¶ 26-28. She also set her own schedule, visited customers as she thought appropriate and participated in the training of another employee. *Id.* at ¶¶ 29-31. She was terminated in 2018. *Id.* at ¶ 36.

**DISCUSSION**

*Standard of Review*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd*

---

[1] This fact provides an example of the many immaterial disputes. Plaintiff makes much ado about the fact that a coworker lacked higher education credentials in Human Resources, yet his resume reflects work experience in social work-type settings. *Id.* at ¶ 14.

*Harbor,* 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz,* 643

Fed.Appx. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

   *Plaintiff's Overtime Claims under the FLSA and the NYSHRL*

   The FLSA set forth requisites concerning the payment of overtime wages.   Among

its many provisions are certain exemptions which "are to be narrowly construed against the

employers seeking to assert them and their application limited to those establishments

plainly and unmistakably within their terms and spirit."   *Arnold v. Ben Kanowsky, Inc.,* 361

U.S. 388, 392 (1960).   Those narrowly-construed exemptions include "any employee

employed in a bona fide executive, administrative, or professional capacity."   29 U.S.C. §

213(a)(1).

   In this case, defendants invoke the so-called "administrative exemption."[2]   The

Second Circuit has observed:

   The statute specifying that employees who work in "bona fide executive,
   administrative, or professional capacit[ies]" are exempt from the FLSA overtime
   pay requirements does not define "administrative." 29 U.S.C. § 213(a)(1). Federal
   regulations specify, however, that a worker is employed in a bona fide
   administrative capacity if she performs work "directly related to management
   policies or general business operations" and "customarily and regularly exercises
   discretion and independent judgment."  29 C.F.R. § 541.2(a).  Regulations further
   explain that work directly related to management policies or general business
   operations consists of "those types of activities relating to the administrative
   operations of a business as distinguished from 'production' or, in a retail or service
   establishment, 'sales' work." 29 C.F.R. § 541.205(a).  Employment may thus be
   classified as belonging in the administrative category, which falls squarely within
   the administrative exception, or as production/sales work, which does not.

*Davis v. J.P. Morgan Chase & Co.,* 587 F.3d 529, 531–32 (2d Cir. 2009).   The guidance

---

[2] Defendants also invoke the "professional" exemption, but on this record, the argument proves unpersuasive, as there seems to be no consistent formal course of education required for the position held by plaintiff, nor is it clear whether the professional experience required consisted of social work or human resources.  *Young v. Cooper Cameron Corp.,* 586 F.3d 201, 205–06 (2d Cir. 2009) ("a professional is someone '[w]hose primary duty consists of the performance of [w]ork requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study'") (quoting 29 C.F.R. § 541.3(a)(1)).

provided by Department of Labor regulations suggests that an employee, like plaintiff, who earns more than $455[3] per week, qualifies as an administrative employee if (1) the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," 29 C.F.R. § 541.200(a)(2); and (2) that such primary duty "includes work requiring the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).

There is no question that plaintiff here meets the salary requirement and performed non-manual office work, and there is little doubt that she exercised substantial discretion in her position.[4]  The question of whether her "primary duty . . . directly related to management or general business operations of the employer or the employer's customers," requires further consideration.  The Department of Labor has promulgated a separate regulation defining this phrase as follows:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement;

---

[3] "As of January 1, 2020, this amount has been adjusted upwards to $684 per week. *See* 29 C.F.R. § 541.100(a)(1). However, the Court uses the prevailing rate at the time of Plaintiff's employment." *Timberg v. Toombs*, No. 20-CV-6060 (MKB), 2022 WL 954739, at *5 (E.D.N.Y. Mar. 30, 2022).

[4] Plaintiff makes a half-hearted argument that the subject position did not afford discretion over "matters of significance." DE 52-1 at 8.  However, even the slightest familiarity with the software service industry, or the most cursory review of plaintiff's own deposition testimony reveals that her work was highly significant to the business. DE 55-1 ¶ 22.

advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.  Some of these activities may be performed by employees who also would qualify for another exemption.

(c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R. § 541.201.

The amount of deference accorded to these regulations must be viewed in light of the Supreme Court's decision in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 166 (2012), which rejected the Department of Labor interpretation of "its own ambiguous regulations" concerning the "outside salesman" exemption to the FLSA.  At the same time, to the extent the regulations remain not "unpersuasive," courts may accord them appropriate deference.  *Id.* at 158–59.  Here, the regulatory explication of the statutory language proves compelling.

As noted, it is undisputed that the defendants offered recordkeeping software and related services to organizations that provide assistance to individuals with mental or developmental disabilities.  As an account manager, the plaintiff's role encompassed functions of running that business, to wit: visiting customer locations, training employees on the use of the software and helping devise ways to customize the software to meet clients' needs.  She was, importantly, not selling or creating the software, and therefore cannot properly be categorized as being involved in the production or sales aspects of the endeavor.  *Davis*, 587 F.3d at 531–32.  Indeed, plaintiff concedes that she was not involved in sales.  DE 52-1 at 8 ("The deposition testimony, however, contains nothing to indicate that

5

Plaintiff ever negotiated pricing and contracts, or that she closed sales."). Moreover, her primary duties also included work directly related to the management of the businesses of the defendants' customers, as she routinely provided advice and expertise involving regulatory recordkeeping requirements and technical assistance with administration of the software products to help customers run their businesses. This further supports the notion that plaintiff's position fell within the ambit of the administrative exemption.

Thus, defendants are entitled to summary judgment regarding plaintiff's FLSA claim. Furthermore, this exemption applies with equal force to the NYSHRL overtime claim. *See Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386 (CM), 2012 WL 1514810, at *7 (S.D.N.Y. 2012) ("if Plaintiff is subject to the FLSA's exemptions, she is also exempt from the NYLL's protections"). The Court will therefore enter summary judgment as to plaintiff's overtime claims.

*Plaintiff's Remaining State Law Claims*

Defendants move for summary judgment on the remaining state law notice and recordkeeping claims, but such is not warranted on the current record. Having entered summary judgment with respect to the sole federal claim in the case, the Court hereby declines to exercise supplemental jurisdiction as to the remaining claims, which involve distinct and *de minimus* disputes. 28 U.S.C. § 1367(c).

**CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment is GRANTED as to plaintiff's federal and state overtime claims and DENIED as to the remaining state law recordkeeping and notice allegations. As to the latter claims, however, the Court declines to exercise supplemental jurisdiction, such that the notice and recordkeeping

claims are DISMISSED without prejudice.  The Clerk of the Court is directed to enter

judgment consistent with this Order and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
       June 30, 2022

                          /s/ Gary R. Brown
                          GARY R. BROWN
                          United States District Judge